# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEREMY HUE OWENS,** *et al.*,

     **Plaintiffs,**

  v.                                   Case No. 2:17-cv-813
                                        JUDGE GEORGE C. SMITH
                                        Magistrate Judge Vascura

**NATIONAL INDEMNITY COMPANY,**

     **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon the parties' cross-motions for summary judgment (Docs. 30–31). The motions are fully briefed and ripe for disposition.[1] For the following reasons, Defendant's motion is **GRANTED** and Plaintiffs' motion is **DENIED**.

## I.     BACKGROUND

The underlying facts are not in dispute. On March 13, 2015, Plaintiff Jeremy Owens was seriously injured in an accident when he, a member of a road crew patching potholes, was struck by a pickup truck owned and operated by Joseph Adkins. On August 4, 2015, Jeremy and his wife, Plaintiff Brooke Owens, commenced a personal injury action against Joseph Adkins in the Court of Common Pleas for Madison County, Ohio. (Doc. 1-2, State Court Compl.). Plaintiffs later amended their complaint in the state action to add Joseph's brother, Ernest Adkins, doing business as Ernie's Truck and Tire Repair, as an additional defendant. (Doc. 31-5, State Court Am.

---

[1] Defendant also moved for leave to file a surreply brief in relation to Plaintiffs' motion for summary judgment, which Plaintiffs opposed. (Docs. 37–38). Defendant's motion is hereby **GRANTED** and the Court will consider the parties' surreply arguments in deciding Plaintiff's motion for summary judgment.

Compl.). Plaintiffs claimed that Joseph was an employee of Ernest's garage business and was acting within the scope his employment with Ernest at the time of the accident. (*Id.*).

Ernest maintained a policy of liability insurance for his garage business with Defendant National Indemnity Company ("National") that was in effect at the time of the accident. (Doc. 26-1, Policy). National learned of the accident when it received a copy of the Amended Complaint from Plaintiffs' counsel in October 2015. National denied coverage for the claim because, at the time of the accident, Joseph was driving a vehicle that was not a "covered auto" under the Policy. (Doc. 27-1, Denial of Coverage Letter).

On July 24, 2017, the state court entered a consent judgment submitted by Plaintiffs, Joseph, and Ernest that granted judgment against Joseph and Ernest in favor of Plaintiffs in the sum of $2,000,000. (Doc. 30-7, State Court Judgment). The judgment entry also stated that Plaintiffs "shall affect [*sic*] satisfaction of this judgment by supplementary proceedings authorized by statute, or other claims against liability insurers for Defendants, . . . including but not limited to National Indemnity Company . . ." and that "Plaintiffs shall have no further recourse against Defendants to satisfy this judgment except as set forth hereinbefore, by an action or actions, including but not limited to a supplementary complaint against liability insurers of the Defendants."[2] (*Id.*).

On August 14, 2017, Plaintiffs filed a supplemental complaint in the state action against National under Ohio Revised Code § 3929.06, which permits a judgment creditor to seek satisfaction of the judgment from the judgment debtor's liability insurer. (Doc. 1-2, Suppl. Compl.). National removed the supplemental complaint to this Court on September 15, 2017. (Doc. 1).

---

[2] Joseph was insured under a GEICO auto liability policy; as part of the consent judgment, GEICO agreed to pay its policy limits of $25,000 and was expressly excluded from any further enforcement efforts by Plaintiffs. (*Id.*)

## II. STANDARD OF REVIEW

The parties move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact

3

sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. ANALYSIS

National argues that Jeremy's injuries are not covered by the Policy because Joseph was using a vehicle that was not a "covered auto" at the time of the accident. For the following reasons, the Court agrees.

**A. The Court assumes without deciding that the consent judgment is valid.**

First, National argues that the consent judgment in the state action is invalid for various reasons and cannot impose liability on National. Plaintiffs argue that the entry of judgment against Ernest in addition to Joseph "at a minimum embraces judgment on [Plaintiffs'] allegation that Joe Adkins was 'acting within the scope and course of agency and/or employment' by Ernie Adkins when he negligently struck Jeremy Owens." (Doc. 31, Pls.' Mot. at 5). National disputes this reading of the consent judgment because no evidence was introduced in the state action in support of this allegation and the state court made no findings of fact to that effect. (Doc. 33, National's

Resp. at 16–17). National also points out that Plaintiffs commenced the supplemental action before the 30-day period provided for by Ohio Revised Code § 3929.06 had elapsed. (*Id.* at 18). Further, National contends the state court was without jurisdiction to enter the consent judgment because the $2,000,000 judgment exceeded the caps on recoverable non-economic losses imposed by Ohio Revised Code § 2315.18. (*Id.* at 18). Finally, National argues the consent judgment was the product of collusion—that is, because Plaintiffs agreed to never seek satisfaction of the judgment directly from them, Joseph and Ernest "would have agreed to virtually anything Plaintiffs' counsel put in the Judgment Entry." (*Id.* at 16–17).

Ultimately, however, none of these issues are material. Because, as explained below, National is entitled to judgment even if the consent judgment is valid, the Court assumes its validity without so deciding.

**B.    National may raise contract defenses in a supplemental action based on a valid judgment.**

Assuming for the sake of argument that the consent judgment does everything Plaintiffs argue it does—that it establishes as res judicata that Joseph was Ernest's employee and acting within the scope of his employment at the time of the accident—National is not liable to Plaintiffs simply by virtue of the consent judgment's existence. Liability ensues only if Joseph's negligence was covered by the Policy. O.R.C. § 3929.06(C)(1) ("[T]he insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy in a declaratory judgment action or proceeding.").

As the Ohio Supreme Court has explained, "[i]t is well established that the rights of such a plaintiff against the insurer cannot rise above those of the insured, and that any defenses which would have been available to the insurer in an action by the insured are equally available to the insurer when named a defendant in a supplemental petition filed under the provisions of Section

5

3929.06, Revised Code." *Bennett v. Swift & Co.*, 163 N.E.2d 362, 364 (Ohio 1959). *See also Transamerica Ins. Co. v. Taylor*, 504 N.E.2d 15, 17 (Ohio 1986), overruled on other grounds by *Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118 (Ohio 1987) (in a proceeding under § 3929.06, "insurance companies may raise any defense that they would have against the insured."). Thus, for Plaintiffs to succeed, the language of the Policy must encompass the accident.

**C.     The Policy does not provide coverage for the accident.**

Ernest's Policy is based on National's standard Garage Coverage Form, CA 00 05 10 01. (Doc. 26-1, Policy, PAGEID #432–47). Plaintiffs assert the accident is covered by the portion of the Policy providing coverage for "'Garage Operations' — Other Than Covered 'Autos.'" (Doc. 31, Pls.' Mot. at 7). This section of the Policy provides as follows:

> SECTION II – LIABILITY COVERAGE
> 
>   A. Coverage
> 
>     1. "Garage Operations" – Other Than Covered "Autos"
> 
>       a. We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

(Doc. 26-1, Policy at PAGEID #433). Several terms in this provision must be defined before the extent of coverage can be ascertained.

First, "auto" means "a land motor vehicle, 'trailer' or semitrailer." (*Id.* at PAGEID #445). No party disputes that Joseph's truck was an "auto" as defined by the Policy. Next, covered "autos" are determined by consulting the "coverage symbols" listed next to a coverage on the declarations page of the Policy. "The symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" (Doc. 26-1, Policy, PAGEID #432). In Ernest's policy, coverage symbol "30" is entered on the declarations page next to "Liability"

6

coverage. (*Id.* at PAGEID #428). Coverage symbol 30 is defined by the Policy as "'Autos' Left With You For Service, Repair, Storage Or Safekeeping — Any customer's land motor vehicle or trailer or semitrailer while left with you for service, repair, storage or safekeeping. Customers include your 'employees', and members of their households, who pay for the services performed." (*Id.* at PAGEID #433). Joseph was clearly not operating a covered "auto" at the time of the accident, because the vehicle he was driving was out on the road and not "left with" Ernest's business "for service, repair, storage, or safekeeping." Plaintiffs expressly concede that Joseph's pickup truck was not a covered "auto" under the Policy. (Doc. 31, Pls.' Mot. at 6).

Further, "insured" is defined, for purposes of "Garage Operations Other Than Covered 'Autos," as including "your employees, directors or shareholders" "but only while acting within the scope of their duties." (*Id.* at PAGEID #434–35, 448). Thus, to the extent Joseph was employed by Ernest and acting within the scope of that employment at the time of the accident (a fact that the Court continues to assume without deciding), Joseph qualifies as an "insured" under the Policy.

Finally, it is undisputed that Jeremy suffered "bodily injuries" "caused by an 'accident.'" As a result, the existence of coverage turns entirely on the definition of "garage operations." In the Garage Coverage Form, "garage operations" is defined as follows:

SECTION VI — DEFINITIONS

\* \* \*

H. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

(Doc. 26-1, Policy at PAGEID #445–46). Plaintiffs argue that this provision establishes coverage because Joseph, acting in the scope of his employment, was on his way to perform an errand on

7

behalf of Ernest's business, which constitutes "operations necessary or incidental to a garage business." (Doc. 31, Pls.' Mot. at 7).

However, the Policy also includes an Endorsement titled "Garage Coverage—Exclusion of 'Autos' Other Than Covered 'Autos'" which provides:

> SECTION VI — DEFINITIONS, "Garage operations" is deleted and replaced by the following:
>
> "Garage operations" means the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance, or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also includes all operations necessary or incidental to a garage business. **"Garage operations" does not include the ownership or use of any "auto" which is not a covered "auto" under this policy.**

(*Id.* at PAGEID #454) (emphasis added). It is incontrovertible that Plaintiffs' injuries arise out of an accident caused by the "use of an[ ] 'auto' which is not a covered 'auto' under [the Policy]." Jeremy was injured when he was struck by a truck owned and operated by Joseph, a truck that Plaintiffs expressly concede is not a covered "auto." Thus, even if Joseph were an employee of Ernest and Joseph was acting within the scope of that employment at the time of the accident, the Endorsement specifically excludes coverage for the use of Joseph's vehicle. As a result, Plaintiff's injuries are not covered by the Policy.[3]

**D.      The exclusion for the use of non-covered autos is not ambiguous or unconscionable.**

Although the Endorsement's definition of "garage operations" expressly excludes coverage for use of non-covered autos such as Joseph's truck, Plaintiffs argue that the Endorsement

---

[3] As further justification for denial of coverage, National also points to an additional provision of the same Endorsement, which adds a new exclusion to liability coverage under the Policy for injuries "resulting from the maintenance of any 'auto' which is not a covered 'auto' under this policy if such [injuries] occur[ ] while such 'auto' is being used for garage business." (Doc. 26-1, Policy at PAGEID #454). However, it is not clear to the Court that Plaintiffs' injuries resulted from the "maintenance" of Joseph's truck. Because coverage for the "use" of Joseph's truck is expressly excluded by the Endorsement's revised definition of "garage operations," the Court need not decide the import of the "maintenance" exclusion.

8

is "buried at the end of the policy" and "any average person reading the Policy would expect that National would not both grant coverage for 'other than covered autos' prominently at the beginning of the Policy issued in 2014, only to remove that coverage by an Endorsement . . ." (Doc. 31, Pls.' Mot. at 7). Plaintiffs also suggest that "the average person would find such a Policy ambiguous at a minimum, and much more likely unconscionable, as there was absolutely no reasonable basis to use an old Policy form which granted liability coverage for garage operations not involving covered autos, and another form excluding non-covered autos from garage operations at the end of the same Policy." (*Id.* at 8). The Court disagrees.

First, the Endorsement is not "buried" at the end of the policy. As with any contract, all terms of an insurance policy must be considered as a whole to arrive at the contracting parties' intent. *Laboy v. Grange Indemn. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015) ("[t]he fundamental goal when interpreting an insurance policy is to ascertain the intent of the parties from a reading of the policy *in its entirety* and to settle upon a reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect.") (emphasis added). The Endorsement expressly says that it "modifies insurance provided under" the Garage Coverage Form in standard size type at the top of the page. (Doc. 26-1, Policy at PAGEID #454). The mere fact that the endorsement is included near the end of the Policy documents is not evidence that it was, or was intended to be, hidden. Moreover, it is commonplace for insurers to use standard coverage forms as a starting point so that they need not craft entire policies from scratch for each insured. They then achieve coverage tailored to the insured's choices by adding endorsements that alter the standard coverage form terms as appropriate. There is nothing deceptive about this practice.

Nor does the Endorsement create ambiguity. While "provisions in an insurance contract that are reasonably susceptible of more than one interpretation will be construed liberally in favor

9

of the insured," this rule "will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Laboy*, 41 N.E.3d at 1227 (citing *King v. Nationwide Ins. Co.,* 519 N.E.2d 1380 (Ohio 1988), syllabus, and *Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 875 N.E.2d 31, 34 (Ohio 2007)). The Court cannot see a reasonable interpretation of the Endorsement that leads to more than one interpretation. The Endorsement expressly states that the definition contained in the standard Garage Coverage Form is "deleted and replaced by" the definition excluding coverage for the use of autos other than covered autos. (Doc. 26-1, Policy at PAGEID #454). This language creates a single, clear result: that the original definition in the standard Garage Coverage Form is not effective, and the definition in the Endorsement is.

Finally, the Endorsement is not unconscionable. The party asserting the unconscionability of a contract bears the burden of proving that the contract involves "both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) (quoting *Lake Ridge Academy v. Carney*, 613 N.E.2d 183 (Ohio 1993)). That is, "the party challenging a contract as unconscionable must prove 'a quantum' of both procedural and substantive unconscionability." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 24 (Ohio 2008) (citing *Ball v. Ohio State Home Servs., Inc.,* 861 N.E.2d 553, 555 (Ohio Ct. App. 2006)).

While Plaintiffs allude to the Policy's possible unconscionability, the Court finds they have not offered evidence sufficient to raise a genuine issue of material fact as to either procedural or substantive unconscionability. As to the substantive prong, Plaintiffs insist, without citation, that a reasonable person would have "expected" that coverage for "'Garage Operations' – Other Than Covered 'Autos'" would include coverage for the use of autos other than covered autos. However, as explained *supra*, that "expectation" is defeated by reading the Policy in its entirety.

Plaintiffs also suggest that National was obligated, at the time Ernest purchased the Policy, to provide coverage for all vehicles used in his business. (Doc. 32, Pls.' Resp. at 8). They rely on Ohio's financial responsibility law, which states:

> No person shall operate, or permit the operation of, a motor vehicle in this State, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle or, in the case of a driver who is not the owner, with respect to the driver's operation of the vehicle.

O.R.C. § 4905.101(A)(1). Plaintiffs contend that, "[g]iven that Ernie Adkins had no other liability insurance coverage for his trucks utilized in his proprietorship, Ernie certainly was entitled to expect National would write a Policy compliant with Ohio law." (Doc. 32, Pls.' Resp. at 8). But § 4905.101(A)(1) does not impose a duty on *insurers* to provide any particular type of coverage. Rather, the statute puts the onus on vehicle *owners* to obtain compliant coverage. In this case, Ernest did not even own the vehicle at issue. Joseph did, and he apparently complied with § 4905.101(A)(1) by obtaining an auto insurance policy from GEICO, who already offered its policy limits to Plaintiffs. (Doc. 30-7, State Court Judgment).

Nor have Plaintiffs introduced evidence or argument to suggest that Ernest was deprived of any meaningful choice in purchasing the Policy. National seeks to underscore this point by relying on Ernest's application for the Policy as well as an affidavit by Jim Ross, Ernest's insurance agent through which he purchased the Policy. (Doc. 33-1, Application; Doc. 39-1, Ross Aff.). Plaintiffs object to the introduction of the application at this juncture, relying on an agreement between the parties to limit the exhibits used in the summary judgment motions. Because the Court finds that the Endorsement is not substantively unconscionable, and because Plaintiffs have not introduced any evidence as to procedural unconscionability, the Court need not consider the application or Mr. Ross's affidavit at this time. Accordingly, National's Motion for Leave to File Affidavit of Jim Ross is denied as moot.

In sum, the Endorsement expressly excludes coverage for Plaintiffs' claims, and Plaintiffs have not established that the Endorsement is invalid on any grounds. National is therefore entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED** and Plaintiffs' Motion for Summary Judgment (Doc. 31) is **DENIED**. Defendant's Motion for Leave to File Affidavit of Jim Ross is **DENIED AS MOOT**.

The Clerk shall remove Documents 30, 31, and 39 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**